215 P.3d 266 (2009)
2009 WY 109
In the Matter of the Termination of Parental Rights to L.A., a minor child:
R.L.A. Appellant (Respondent),
v.
The State of Wyoming, Department of Family Services, Appellee (Petitioner).
No. S-08-0274.
Supreme Court of Wyoming.
September 2, 2009.
Representing Appellant: John M. Burman, Faculty Supervisor, University of Wyoming Legal Services Program; Aaron S. Hockman, Student Intern; and Matthew Landers, Student Intern. Argument by Mr. Hockman.
Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Sue Chatfield, Senior Assistant Attorney General. Argument by Ms. Chatfield.
Guardian Ad Litem: Donald K. Slaughter, Rock Springs, Wyoming. No appearance.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
*267 KITE, Justice.
[¶ 1] RLA (Father) appeals from the district court's order terminating his parental rights to his son, LA (Child), pursuant to Wyo. Stat. Ann. § 14-2-309(a)(iv) (LexisNexis 2009) because he was incarcerated on a felony conviction and was unfit to have custody and control of Child. Father claims the Department of Family Services (DFS) did not present sufficient evidence to establish he was unfit.
[¶ 2] We affirm.

ISSUE
[¶ 3] The dispositive issue in this case is whether the district court properly concluded DFS presented clear and convincing evidence that Father was unfit to have care and custody of Child.

FACTS
[¶ 4] Child was born November 25, 2006, to KW (Mother) and Father. Because Child tested positive for methamphetamine at birth, DFS took him into protective custody. The parents lived together and DFS determined it would not be appropriate to place Child with Father because of the presence of methamphetamine in the household. Mother subsequently relinquished her parental rights to Child.
[¶ 5] DFS prepared a case plan, dated January 19, 2007, which listed the permanency goal as family reunification and required Father to provide a copy of his drug and alcohol evaluation and comply with its recommendations; complete a parenting class; and attend regular visitation with the Child after having clean urinalyses (UAs). Father did well on the plan for the first few weeks, completing a parenting class and regularly attending visitation after submitting clean UAs. However, in February 2007, Father admitted to using methamphetamine and "flushing," i.e., consuming large amounts of liquid to obtain clean UAs. Because at the time of his admission Father was on probation for a prior burglary, he was incarcerated for thirty days.
[¶ 6] After completing his jail term, Father entered an inpatient treatment program to address his drug problems. However, he left the program without permission less than twenty-four hours later. A warrant was issued for Father's arrest and, although DFS regularly contacted him on a cell phone over the next few months to set up visitation with Child, he declined because he did not want to risk being arrested.
[¶ 7] On July 20, 2007, Father led law enforcement officers on a high speed chase; he was eventually apprehended in Colorado after almost running over the officers. The officers found syringes that tested presumptively positive for methamphetamine in the vehicle he was driving. DFS contacted Father while he was incarcerated in Colorado, but he did not inquire about Child's well-being. While awaiting completion of his criminal proceedings, Father offered to relinquish his parental rights to Child in return for lenient treatment on his criminal charges.
[¶ 8] DFS filed a petition to terminate Father's parental rights on January 9, 2008. The petition included two bases for termination of parental rights under § 14-2-309(a): 1) Father was incarcerated on a felony conviction and was unfit to have care and custody of Child under subsection (iv); and 2) Child had been in foster care for fifteen of the most recent twenty-two months and Father was unfit under subsection (v). Despite having filed the termination petition, DFS developed a case plan with Father in March 2008, which listed family reunification as a concurrent plan. Father agreed to the provisions of the plan pertaining to visitation with Child. He did not, however, agree with other provisions of the plan which required him to maintain contact with Child by writing him letters three times per week and researching and writing multiple monthly reports about child development, discipline and attachment disorder issues. In a letter, he indicated that he was willing to write Child once per week and submit one child development report per month.
[¶ 9] DFS transported Child to the penitentiary for visitation with Father in March 2008. At that time, Father had not had any contact with Child, who was approximately *268 sixteen months old, for almost eleven months. According to the DFS case worker who supervised the visit, it was awkward, with Father spending most of his time conversing with his own mother and the caseworker rather than interacting with Child. Moreover, when Child started fussing, Father's mother asked him if he would hold Child. Father replied, "No, he is just a brat. He has been spoiled like that since he has been born. He just wants to be held."
[¶ 10] At the next visitation, Father interacted a little with Child, but he spent most of the visit talking to his father and stepmother who also attended the visitation. According to the caseworker who supervised the visit, Father showed no emotional attachment to Child. The May 2008 visit had to be canceled because Child was hospitalized. When the caseworker called to inform Father of the cancellation, he asked when the termination hearing was scheduled to be held but did not inquire about Child's health. The next visit in June 2008 apparently went better than the others, although the caseworker reported that Father continued to show little affection for Child.
[¶ 11] The district court held a hearing on the termination petition on July 11, 2008. DFS withdrew its allegation under § 14-2-309(a)(v) at the beginning of the hearing and focused its case on whether termination was appropriate under § 14-2-309(a)(iv) because Father was incarcerated on a felony conviction and was unfit to have custody and control of Child. Father stipulated that he was incarcerated on a felony conviction and the district court ruled that DFS had proven by clear and convincing evidence that he was presently unfit to parent Child. Consequently, it entered an order terminating Father's parental rights. He appealed.

STANDARD OF REVIEW
[¶ 12] Father challenges the sufficiency of the evidence to support the district court's termination decision.
[W]e apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. Thus, we examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party.
SLB v. JEO (In the Interest of ANO), 2006 WY 74, ¶ 7, 136 P.3d 797, 799-800 (Wyo. 2006), quoting SLJ v. Dep't of Family Servs., 2005 WY 3, ¶ 19, 104 P.3d 74, 79-80 (Wyo. 2005). See also, C.L. v. Wyo. Dep't of Family Servs., 2007 WY 23, ¶ 8, 151 P.3d 1102, 1105 (Wyo.2007).
[¶ 13] In applying our standard of review, we keep in mind that the right to associate with one's family is fundamental and strictly scrutinize petitions to terminate a parent's rights to his or her children. C.L., ¶ 9, 151 P.3d at 1105; SLB, ¶ 7, 136 P.3d at 799-800; TF v. Dep't of Family Servs., 2005 WY 118, ¶ 15, 120 P.3d 992, 1000 (Wyo.2005). DFS has the obligation to establish by clear and convincing evidence that termination is appropriate. SLJ, ¶ 19, 104 P.3d at 79-80. "`Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable.'" Id., quoting MN v. Dep't of Family Servs., 2003 WY 135, ¶ 5, 78 P.3d 232, 234 (Wyo.2003).

DISCUSSION
[¶ 14] Section 14-2-309(a) provides seven separate bases for termination of parental rights:
(a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:
(i) The child has been left in the care of another person without provision for the child's support and without communication from the absent parent for a period of at least one (1) year. In making the above determination, the court may disregard occasional contributions, or incidental contacts and communications;
(ii) The child has been abandoned with no means of identification for at least three (3) months and efforts to locate the parent have been unsuccessful;

*269 (iii) The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent;
(iv) The parent is incarcerated due to the conviction of a felony and a showing that the parent is unfit to have the custody and control of the child;
(v) The child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child;
(vi) The child is abandoned at less than one (1) year of age and has been abandoned for at least six (6) months;
(vii) The child was relinquished to a safe haven provider in accordance with W.S. XX-XX-XXX through XX-XX-XXX, and neither parent has affirmatively sought the return of the child within three (3) months from the date of relinquishment.
Father conceded the first element of § 14-2-309(a)(iv)that he was incarcerated on a felony conviction. The evidence at the hearing, therefore, focused on the second element whether Father was fit to have custody and control of Child. See, DKM v. RJS, 924 P.2d 985, 987 (Wyo.1996) (indicating that both elements of § 14-2-309(a)(iv) must be proven by clear and convincing evidence). The terms fit and/or unfit are not defined in the termination statutes. Obviously, the determination of whether a parent is unfit to have care and custody of a child must be made within the context of a particular case and will depend upon the situation and attributes of the specific parent and child. Looking at our cases, we are able to extrapolate that fitness includes the ability to meet the ongoing physical, mental and emotional needs of the child. See CDB v. DJE, 2005 WY 102, ¶ 7, 118 P.3d 439, 441 (Wyo.2005). See also, RHF v. RMC (In the Matter of the Adoption of JLP), 774 P.2d 624, 630 n. 7 (Wyo.1989) (reviewing, in a footnote, definitions of unfit from other jurisdictions).
[¶ 15] The district court ruled that Father was an unfit parent and termination of his parental rights to Child was warranted under § 14-2-309(a)(iv). Father asserts that he is not unfit; he is simply a first time father who is trying to learn to parent. He maintains that he was working toward being a good parent. Father argues that DFS's case was weak because it focused on the fact he was not "cuddly" with Child.
[¶ 16] DFS presented evidence that Father did not have an emotional bond with Child. That was, however, just a small part of its case. DFS also produced evidence that Father had an on-going drug problem, which, at the time of the hearing, he still had not addressed through treatment or counseling. Additionally, the hearing evidence established that he had a significant criminal history involving illegal controlled substances, absconding from law enforcement and the high speed chase in July 2007. Additional evidence was presented that Father continually declined opportunities to visit Child while the warrant was out for his arrest and he offered to relinquish his parental rights to secure more lenient treatment in his criminal case. Furthermore, he refused to comply with many of the provisions identified by DFS in the case plans to develop his child rearing skills.
[¶ 17] Father also indicates that the district court incorrectly focused on his incarceration and past behavior instead of his fitness to parent at the time of the hearing. Father is correct in asserting that incarceration, by itself, is not sufficient to establish a parent is unfit and, thereby, justify termination of parental rights. JD v. State of Wyoming, Dep't of Family Servs., 2009 WY 78, ¶ 18, 208 P.3d 1323, 1328 (Wyo.2009). See also, BA v. Laramie County Dep't of Family Servs. (In the Interest of FM), 2007 WY 128, ¶ 16, 163 P.3d 844, 849 (Wyo.2007); CDB, ¶ 6, 118 P.3d at 441. In addition, we have repeatedly stated that DFS has the responsibility for showing present unfitness; however, "[e]vidence of past behavior is . . . plainly relevant in determining current parental fitness." *270 JD, ¶ 18, 208 P.3d at 1328. See also, FM, ¶ 19, 163 P.3d at 849.
[¶ 18] Father stated that, due to his incarceration, he was unable to comply with many of the requirements of his case plans. For example, he testified that he was not yet eligible to attend substance abuse classes in prison, prison personnel had refused his request to send part of his prison wages to the court for child support because there was no court order in place, and he did not have access to materials to prepare the child development reports requested by DFS. Commenting on Father's testimony, the district court specifically stated that it did not find him to be a credible witness. Indeed, his excuses for failing to meet the requirements fall apart, to some extent, when the remainder of the record is considered. For example, he stated that he had been denied admission to the substance abuse program; however, his sincerity in seeking treatment is undermined because in a form requesting admission to a substance abuse treatment program at prison, he stated that he did not believe he had a drug or alcohol problem or that he could benefit from treatment.
[¶ 19] Although Father agreed to write one child development report per month, he did not follow through with the agreement, allegedly because he did not have any appropriate reference materials. When asked if he had tried to access such materials, he basically stated that he had not made any efforts to do so. Father also promised to write Child once per week, but only managed to write three letters over the several months he was in prison prior to the termination hearing.
[¶ 20] Father points to very little evidence that he made positive efforts to maintain a relationship with Child. Instead, the evidence showed that he relied upon DFS to make all arrangements for him to have contact with Child. In addition, Father showed little interest in Child's well-beinghe did not inquire about Child after he was apprehended in Colorado and had not had any contact with Child for months and, even when informed that Child was ill and had been hospitalized, he did not ask about his health situation. He also offered to relinquish his parental rights in exchange for more lenient treatment in his criminal case. Conclusive evidence showed that Father never supported or provided an appropriate home for Child and showed little emotional connection to Child or, indeed, any indication that he was making efforts to develop a healthy relationship with Child. Father's actions, including the incident where he called Child a brat during visitation, demonstrated a total lack of empathy for the toddler.
[¶ 21] It is useful to compare Father's efforts and behavior to those of the mother in FM. FM and his sisters were taken into protective custody after a welfare check revealed that the mother's home was dirty and there was evidence that methamphetamine was being used in the home. FM, ¶ 3, 163 P.3d at 846. The mother initially did very little to comply with DFS's efforts to reunite her with FM and was eventually convicted of delivery and conspiracy to deliver methamphetamine. She was placed on probation and ordered to complete a drug treatment program, but chose instead to leave the jurisdiction. After a five month absence, FM's mother turned herself in to authorities. Her probation was revoked and she was sentenced to prison. Id., ¶¶ 4-5, 163 P.3d at 846.
[¶ 22] While she was in prison, DFS filed a petition to terminate her parental rights to FM. Id., ¶ 6, 163 P.3d at 846-47. The district court granted the termination petition, but we reversed, concluding there was insufficient evidence in the record to support termination of the mother's parental rights to FM. Id., ¶ 25, 163 P.3d at 850. Unlike Father, FM's mother attempted to maintain contact with her children from the time they were removed from her home, even when she left the jurisdiction to avoid criminal prosecution. In contrast to Father's efforts in this case, FM's mother completed a variety of courses to address her drug dependency, parenting problems, and employment needs after her son had been removed from her custody. At the termination hearing, she testified that "she [was] not the same person" as when she was in the midst of her legal troubles. FM, ¶ 17, 163 P.3d at 849.
*271 [¶ 23] In contrast to the efforts of FM's mother, Father had very limited contact with Child during his life, made little effort to develop or maintain a relationship with him or improve his parenting skills and did not have the present ability to provide for the ongoing physical, mental and emotional needs of Child. We conclude, therefore, that DFS presented clear and convincing evidence showing Father was unfit to have care and custody of Child.
[¶ 24] Finally, Father claims that DFS misled him in violation of fundamental fairness by not providing reasonable efforts to help him to reunify with Child. We have previously held that DFS is required to show it made reasonable reunification efforts and its rehabilitation efforts were unsuccessful only when it requests termination under § 14-2-309(a)(iii). The other provisions of § 14-2-309(a), including subsection (iv), do not require DFS to make reasonable reunification efforts. SLJ, ¶ 32, 104 P.3d at 82-83. Moreover, Father's argument that he was somehow misled by DFS when it continued to provide him services and visitation opportunities after filing the termination petition is untenable. Evidence that he conversed about the termination action with his family members during visitation with Child and with the DFS caseworker indicated he was well aware of the pending termination action.
[¶ 25] Affirmed.