# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 143

### OCTOBER TERM, A.D. 2014

### November 7, 2014

IN THE MATTER OF THE
TERMINATION OF PARENTAL
RIGHTS TO AGS and AMLD, Minor
Children.

SAS,

Appellant
(Respondent),

v.

STATE OF WYOMING, DEPARTMENT
OF FAMILY SERIVCES,

Appellee
(Petitioner).

S-14-0089

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*
Jacqueline K. Brown, Casper, Wyoming.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Douglas J. Moench, Senior Assistant Attorney General; Shawnna M. Herron, Assistant Attorney General.  Argument by Ms. Herron.

*Guardian Ad Litem:*
Dan S. Wilde and Aaron S. Hockman, Cheyenne, Wyoming.  Argument by Mr. Hockman.



*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   Appellant SAS appeals the district court's order terminating her parental rights to her two children, AGS and AMLD.  SAS alleges that the district court lacked jurisdiction to terminate her parental rights because the Department of Family Services (DFS) and the district court did not comply with statutorily mandated deadlines; that DFS failed to establish by clear and convincing evidence that parental rights should be terminated; and that cumulative errors committed throughout the proceedings violated her constitutional right to due process.  In her reply brief, SAS also argues that she received ineffective assistance of trial counsel.  We affirm.

### ISSUES

[¶2]   1.   Did the district court lose jurisdiction to terminate SAS's parental rights when DFS and the district court did not abide by the statutory deadlines?

2.   Did DFS establish by clear and convincing evidence that SAS's parental rights should be terminated?

3.   Was cumulative error committed such that SAS's constitutional right to due process was violated?

4.   Was SAS's allegation of ineffective assistance of counsel appropriately raised for the first time in SAS's reply brief?

### FACTS

[¶3]   SAS is the biological mother of AGS and AMLD.[1]   SAS, AGS, and AMLD (collectively, the family) have a long history with DFS, the juvenile court, and law enforcement.  Each of the family's contacts with these agencies stem from SAS's abuse of alcohol and narcotics.  Because we base our decision, in part, upon an ongoing pattern of neglect, an overview of the family's history with DFS is necessary.

[¶4]   The family's first contact with DFS occurred in November 2007 in Powell, Wyoming.  At that time, the family was residing with AMLD's biological father.  AGS and AMLD were ages three and one, respectively.  SAS was drinking at home while AMLD's father was at work and the children were asleep.  SAS wanted to continue drinking, so she abandoned the home, leaving the children alone and still asleep in their beds.  On her way to a local bar, SAS was stopped by a police officer, made to perform field sobriety tests, and arrested for driving while under the influence.[2]   DFS became

---

[1] AGS and AMLD have different fathers, neither of whom are at issue in this appeal.
[2] SAS was ultimately convicted of driving while under the influence.

1

involved in the incident after learning that the children had been left at home without supervision. The children were removed from the home, and the juvenile court adjudicated the children neglected. A case plan was implemented, and the children were eventually returned to SAS's custody. DFS closed the case on August 19, 2008.

[¶5] A second contact with law enforcement and DFS occurred on August 31, 2008. Highway patrol responded to a REDDI (report every drunk driver immediately) report in the area of Independence Rock. Troopers soon found the reported vehicle, as well as the driver, SAS, and two child passengers, AGS and AMLD, pulled over on the side of the road. Observing that SAS appeared intoxicated, the troopers administered field sobriety tests which SAS failed. The troopers placed SAS under arrest.[3] The troopers took the children into protective custody finding that they were in "substantial risk of harm or death," and contacted DFS, which then assumed custody of the children. A petition was filed in juvenile court, the court adjudicated the children neglected, and they were again removed from SAS's care. Another case plan was implemented, working toward the goal of reunification with SAS. In accordance with the case plan, both children were eventually reunified with SAS. DFS closed the second case on April 22, 2010.

[¶6] The third contact with DFS and law enforcement occurred on November 24, 2011. At that time, the family was living in Casper, Wyoming, but SAS had traveled to Laramie, Wyoming, with AGS to celebrate Thanksgiving with a friend.[4] Upon reaching Laramie, SAS left AGS with a babysitter, went to a bar with her friend, and began drinking. After a violent confrontation with her boyfriend, SAS picked AGS up from the babysitter and began driving back toward her home in Casper. On their way back to Casper, SAS and AGS were involved in a single car accident. The vehicle rolled, and SAS was thrown from the car. When SAS revived, she found AGS still in the front seat of the vehicle. The pair was soon picked up by a passing driver.

[¶7] After authorities were notified, SAS and AGS were transported to Casper by ambulance. At the hospital, urine samples were taken from SAS indicating an alcohol concentration of .17%. SAS was arrested at the hospital and charged with driving while under the influence of intoxicating liquor and child endangerment. As a result of a plea agreement, SAS pled *nolo contendere* to the drunk driving charge and the child endangerment charge was dismissed. The district court sentenced SAS to nineteen to twenty-four months imprisonment.

[¶8] Meanwhile, a doctor working in the emergency room placed AGS in protective custody after learning of the circumstances of the accident. DFS responded to the hospital and custody of AGS was transferred to DFS. A juvenile petition was filed as a

---

[3] SAS was charged with driving under the influence, two counts of child endangerment, driving with a suspended license, driving with no insurance, driving with no registration, and possession of a controlled substance. SAS was convicted of driving under the influence, two counts of child endangerment, and driving with a suspended license.

[4] At the time, AMLD was staying with her paternal grandmother at SAS's request.

result of the incident in which AGS was identified an abused and neglected child and AMLD was identified a neglected child. SAS did not appear at the initial hearing held on December 14, 2011, and the juvenile court adjudicated the children abused and neglected in accordance with the petition.

[¶9]    SAS was again arrested on April 7, 2013, for "under the influence and . . . possession of cocaine." SAS pled guilty to the charges and was sentenced to a year of incarceration to run concurrent with her sentence resulting from the November 2011 incident. At the time of the trial on the termination petition, SAS was incarcerated in the Wyoming Women's Center.

[¶10]  The termination case commenced on January 18, 2013, when the State filed the petition to terminate SAS's parental rights to both AGS and AMLD and to terminate the parental rights of AGS's father.[5] The State initially filed its petition for termination of SAS's parental rights pursuant to Wyo. Stat. Ann. § 14-2-309(a)(iii) (LexisNexis 2013), which provides that the parent-child relationship may be terminated when

> [t]he child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent[.]

SAS was served with the petition in early April 2013, and filed an answer and counterclaim.

[¶11]  The State later amended its petition to include termination of SAS's parental rights pursuant to Wyo. Stat. Ann. § 14-2-309(a)(v) (LexisNexis 2013), which provides that the parent-child relationship may be terminated when "[t]he child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child[.]"[6]

[¶12]  The district court held the trial on the State's petition to terminate SAS's parental rights beginning December 2, 2013. At its conclusion, the district court determined that the State had proven by clear and convincing evidence that SAS's parental rights should

---

[5] AGS's Father failed to answer the petition, and his parental rights were terminated as a result of a default hearing held on October 25, 2013.

[6] SAS did not answer the amended petition.

3

be terminated pursuant to both statutory provisions. It entered an order to that effect on December 27, 2013. SAS timely perfected this appeal.

## DISCUSSION

[¶13] Before we begin our discussion concerning the issues presented, a brief review of the process leading to termination of parental rights is warranted. When a child is removed from his or her home as a result of abuse or neglect, the procedures and provisions of the Child Protection Act are instituted. Wyo. Stat. Ann. §§ 14-3-401—14-3-440 (LexisNexis 2013). Once the child has been adjudicated abused or neglected, the juvenile court determines the permanency plan for the child—whether the child should be reunified with his or her family or whether the child's best interests are served by severing the parent-child relationship. Wyo. Stat. Ann. § 14-3-431(j). A juvenile court's determination not to reunify the family typically leads to the commencement of termination proceedings against the child's parent or parents. Wyo. Stat. Ann. § 14-3-431(k). The termination proceedings cannot be commenced in the juvenile court, but instead must be brought in district court. As a result, while the underlying decisions relating to the disposition of the child are made in juvenile court, the ultimate determination as to whether parental rights should be terminated rest solely with the district court.[7]

### I. Did the district court lose jurisdiction to terminate SAS's parental rights when DFS and the district court did not abide by the statutory deadlines?

[¶14] SAS first contends that the district court lacked jurisdiction to terminate her parental rights because both DFS and the district court failed to abide by statutorily mandated deadlines. She argues that DFS did not file a petition to terminate her parental rights within sixty days of the juvenile court's determination not to reunify the family as mandated by § 14-3-431(o). SAS next asserts that the district court was required to hold a hearing on the petition within ninety days in accordance with § 14-3-431(p), and its failure deprived the district court of jurisdiction to hear the case. SAS is incorrect on both counts.

[¶15] SAS failed to raise these jurisdictional questions in the district court proceedings. However, "[a] challenge to subject matter jurisdiction may be asserted at any time by any interested party or *sua sponte* by the court at the trial or appellate level." *Ahearn v. Anderson-Bishop P'ship*, 946 P.2d 417, 422 (Wyo. 1997). Because the existence of subject matter jurisdiction is a question of law, we review such challenges *de novo*.

---

[7] While Wyoming statutes provide that jurisdiction over the juvenile proceedings and termination proceedings rest with different courts—juvenile court and district court, respectively—the State of Wyoming does not have a separate juvenile court system. Instead, district judges also serve as juvenile court judges in abuse/neglect, CHINS (child in need of supervision), and delinquency proceedings.

4

*Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 14, 331 P.3d 1174, 1178 (Wyo. 2014) (citations omitted).

[¶16] SAS bases her argument on statutory provisions in the Child Protection Act, §§ 14-3-401—14-3-440. Section 14-3-403(b) of the Child Protection Act states, in pertinent part:[8]

> Nothing contained in [the Child Protection Act] is construed to deprive the district court of jurisdiction to determine questions of custody, *parental rights*, guardianship or any other questions involving minors, when the questions are the subject of or incidental to suits or actions commenced in or transferred to the district court as provided by law[.]

(Emphasis added.) The legislature has made clear that the district court cannot be deprived of jurisdiction to determine issues of parental rights based on any provision within the Child Protection Act when such issues are the subject of an action commenced in district court, as is the case in termination of parental rights proceedings. Section 14-3-403(b) therefore precludes SAS's claim that the district court's jurisdiction was deficient.

[¶17] While § 14-3-403(b) controls the outcome of this issue, we remind both the State and the district courts that the purpose of these statutory deadlines is to prevent children from remaining in "foster care limbo."[9] When the statutory deadlines are ignored, it is the children who suffer by remaining in a state of flux and uncertainty. *See* David J. Herring, *Inclusion of the Reasonable Efforts Requirement in Termination of Parental Rights Statutes: Punishing the Child for the Failures of the State Child Welfare System*, 54 U. Pitt. L. Rev. 139, 144-150 (1992) (discussing the developmental harm to children by long-term placement in temporary foster care). Although failure to comply with the statutory deadlines does not deprive the district court of jurisdiction, those deadlines serve an important function.

## II. Did DFS establish by clear and convincing evidence that SAS's parental rights should be terminated?

[¶18] While the district court determined that the termination of SAS's parental rights had been proven by clear and convincing evidence pursuant to § 14-2-309(a)(iii) and

---

[8] Section § 14-3-403(b) also provides two exceptions, but neither applies in this case.

[9] "Foster care limbo refers to the existence of children who live in foster care for lengthy periods of time. Limbo results when a foster care child cannot be safely returned home; yet he or she is not free for adoption because the state has not terminated the parent-child relationship." Sherry A. Hess, Note, *Texas Family Code Section 263.401: Improving the Mandatory Dismissal Deadline to Be Truly in the Best Interest of the Child*, 9 Tex. Wesleyan L. Rev. 95, 98 (2002).

(a)(v), to affirm its decision, we need only determine whether clear and convincing evidence was presented to support one of the bases for termination under § 14-2-309. *DMM v. State of Wyo., Dep't of Family Servs. (In re ZMETS)*, 2012 WY 68, ¶ 18, 276 P.3d 392, 397 (Wyo. 2012). We therefore analyze whether the district court's determination to terminate SAS's parental rights pursuant to § 14-2-309(a)(v) was supported by clear and convincing evidence.

[¶19] We begin our analysis with the standard of review that we use in termination of parental rights cases:

> Due to the tension between the fundamental liberty of familial association and the compelling state interest in protecting the welfare of children, application of statutes for termination of parental rights is a matter for strict scrutiny. As part of this strict scrutiny standard, a case for termination of parental rights must be established by clear and convincing evidence. Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable. Rigorous though this standard may be, we apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. Thus, we examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party.

*LDC v. State of Wyo., Dep't of Family Servs. (In re ZKP)*, 979 P.2d 953, 956 (Wyo. 1999) (citations omitted).

[¶20] Termination of SAS's parental rights pursuant to § 14-2-309(a)(v) requires clear and convincing proof of two elements: (1) that the children have been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months; and (2) that SAS is unfit to have custody and control of the children. Wyo. Stat. Ann. § 14-2-309(a)(v). We take each of these elements in turn.

[¶21] The first element requires only that we solve a mathematical question. The record reflects that AGS was placed in foster care under the responsibility of the State on November 25, 2011. While the record lacks evidence concerning the exact date that AMLD was first placed in DFS custody,[10] the trial exhibits demonstrate that on

---

[10] In both its original and amended petition, the State alleged that the juvenile court ordered that both children be placed in DFS custody following a shelter care hearing on November 28, 2011. SAS,

6

December 30, 2011, the juvenile court ordered that both children "shall be placed in the continued legal and physical custody of the Department of Family Services." AGS continued in her foster care placement after the initial hearing, and DFS placed AMLD with her paternal grandmother. The State submitted clear and convincing evidence that DFS had custody of the children by at least December 30, 2011, and continuing up until the trial held on December 2 and 3, 2013, establishing that the children were in foster care, under the responsibility of the State, for fifteen of the most recent twenty-two months preceding trial.

[¶22] Prior to the November 2011 incident, SAS had requested that AMLD's paternal grandmother care for AMLD because SAS "was having a hard time." The grandmother agreed, and AMLD was in her grandmother's care when the accident occurred. SAS argues that because she placed AMLD with her grandmother prior to the incident, and because AMLD remained in her grandmother's care following the juvenile court's order, AMLD was not in foster care, but was, in fact, in relative placement. SAS's argument fails. Pursuant to its December 30, 2011 order, the juvenile court directed DFS to assume legal custody of the children. While the physical placement of AMLD did not change, the legal responsibility for AMLD transferred from SAS to DFS upon the juvenile court's order. *See, e.g., In re ZMETS*, 2012 WY 68, ¶ 19, 276 P.3d at 397-98 ("[D]espite the fact that the children's grandparents had physical custody of the children, it is undisputed that DFS was granted legal custody after the children were adjudicated neglected, and that DFS has retained legal custody throughout these proceedings."). Moreover, we have previously examined this issue and found that physical placement with relatives qualifies as foster care when the State has been granted legal custody of a child. *Id.* (finding that the term "foster care" is not limited to "care provided by non-relatives," but also encompasses relative care when the State has legal custody of the child).

[¶23] SAS also contends that the State was only able to satisfy the requirements of § 14-2-309(a)(v) by its own actions. Specifically, SAS argues that the children were left to languish in DFS custody, without a petition to terminate SAS's parental rights, for fifteen out of twenty-two months only to provide the State with an additional basis for termination. SAS is essentially restating her argument that the State was required to file a petition for termination of parental rights within sixty days of the juvenile court's decision not to reunify the family. As we have already found, the State's failure to file a petition within sixty days of the juvenile court's determination not to reunify the family did not deprive the district court of jurisdiction to hear the termination case. Moreover, the record does not support SAS's contention that DFS held the children in foster care for the purpose of running the clock until it could move to terminate SAS's parental rights under § 14-2-309(a)(v).

---

however, denied this allegation in her answer to the original complaint, and there was no evidence presented at trial concerning the exact date that AMLD first came under DFS custody following the November 2011 incident.

[¶24] To terminate under § 14-2-309(a)(v), a district court must also find by clear and convincing evidence that the parent is unfit to have custody and control of his or her children. The termination statutes do not define the term "unfit;" however, we have determined that "fitness includes the ability to meet the ongoing physical, mental and emotional needs of the child." *HJO v. State of Wyo., Dep't of Family Servs. (In re KMO)*, 2012 WY 99, ¶ 19, 280 P.3d 1203, 1211 (Wyo. 2012) (quoting *RLA v. State of Wyo., Dep't of Family Servs. (In re LA)*, 2009 WY 109, ¶ 14, 215 P.3d 266, 269 (Wyo. 2009)). While § 14-2-309(a)(v) requires a finding by the district court that a parent is unfit at the time of the trial, the district court need not "ignore evidence of a parent's previous unfitness." *Id.* (quoting *AJJ v. State of Wyo., Dep't of Family Servs. (In re KMJ)*, 2010 WY 142, ¶ 17, 242 P.3d 968, 971 (Wyo. 2010)). Evidence of a parent's past behavior is "plainly relevant in determining current parental fitness." *Id.* (quoting *JD v. State (In re AE)*, 2009 WY 78, ¶ 18, 208 P.3d 1323, 1328 (Wyo. 2009)).

[¶25] After a careful review of the record, we find that the district court's determination of SAS's unfitness was supported by clear and convincing evidence. The district court heard testimony from various DFS case workers, counselors, family members, and SAS herself concerning SAS's parenting of AGS and AMLD. This testimony demonstrates that SAS has exhibited a clear pattern of neglect adversely affecting, and even injuring, her children. In each and every instance, SAS's reckless and dangerous behavior resulted from her drug and/or alcohol abuse.

[¶26] From November 2007 through November 2011, AGS and AMLD were removed from SAS's care no less than three times following adjudications of abuse and neglect. On each of these occasions, SAS was also charged with violations of the criminal statutes all stemming from her drug and alcohol use. The State presented evidence that SAS attended treatment on three separate occasions in her attempts to recover from her addictions.[11] After each of these treatment periods, SAS relapsed, placing her children in danger each time. Even after AGS's and AMLD's final removal from SAS's custody, SAS demonstrated her unwillingness or inability to stay sober through her arrest and conviction for cocaine use and possession.

[¶27] SAS has not only failed to meet the needs of her children by placing them in danger of physical harm, the record reflects that she has also placed the mental and emotional needs of the children at risk through her behavior. AGS and AMLD have been witness to SAS's drug and alcohol use beginning at a very young age. SAS herself testified that she began drinking and using drugs when she was twelve years old, and has continued such behavior throughout her life, exposing her children time and again to her addictions. Moreover, it is clear that domestic violence has played a significant role in

---

[11] At the time of trial, SAS testified that she was currently in a fourth treatment program through the prison.

not only SAS's life, but also the lives of her children. SAS testified about two of her romantic relationships that the children witnessed, both involving violence. As we have previously recognized, "A young child is not a mere bystander to domestic violence." *RS v. Dep't of Family Servs., Sheridan Cnty. (In re KLS)*, 2004 WY 87, ¶ 23, 94 P.3d 1025, 1031 (Wyo. 2004). The dysfunction of such relationships significantly impacts children, even if the children themselves are not subject to abuse. *See id.* at ¶¶ 21-23, 94 P.3d at 1030-31 (discussing the impact that domestic violence has on children). "Many, if not most, jurisdictions have echoed the conclusion that subjecting children to domestic violence justifies termination of parental rights." *Id.* at ¶ 22, 94 P.3d at 1031.

[¶28] In addition to the extensive history of SAS's unfitness, clear and convincing evidence was also presented demonstrating that SAS was unable to meet the physical, mental and emotional needs of AGS and AMLD at the time of trial. Each of the DFS case workers involved with SAS testified that they had grave concerns about SAS's ability to remain sober and provide appropriate care to her children. A counselor involved in one of SAS's stints in treatment testified that SAS's prognosis was "guarded." Moreover, at the time of trial, SAS was in prison and clearly unable to meet the physical, mental, and emotional needs of AGS and AMLD.

[¶29] SAS argues that the district court erred in finding her unfit because, at the time of trial, she was in a treatment program at the prison that was teaching her a different way of approaching addiction; she enrolled in bible study; she learned her triggers; and she understood that she needed to leave some relationships behind. SAS's alleged transformation occurred while incarcerated. The district court had no opportunity to observe whether SAS's conversion would continue once SAS was removed from that controlled environment. Moreover, our standard of review requires us to "examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party." *In re ZKP*, 979 P.2d at 956 (citation omitted). We therefore do not consider evidence regarding SAS's fitness that conflicts with that presented by the State.

[¶30] In this case, the evidence presented clearly and convincingly supports the district court's decision to terminate SAS's parental rights pursuant to § 14-2-309(a)(v).

### III. Was cumulative error committed such that SAS's constitutional right to due process was violated?

[¶31] SAS argues that "the termination proceedings were replete with errors and the cumulative effect of these errors denies [SAS's] constitutional procedural and substantive due process rights under the Wyoming and United States Constitutions." SAS provides a comprehensive list of these errors:

[T]he State not filing the petition within sixty (60) days when the permanency goal was not reunification, not filing a motion to extend the time for hearing within ninety (90) days, not seeking guardianship timely and not including AMLD's father in the petition to terminate parental rights. The Court erred in allowing testimony and evidence in over [SAS's] hearsay objection . . . , not allowing the mother's counsel to question witnesses regarding the mother's willingness to consent to guardianship, sustaining [SAS's] counsel when she tried to present evidence on less intrusive measures, signing an order extending time for hearing without affording [SAS] an opportunity to be heard or respond, signing the order based upon a motion filed after the 90 day period had expired, and relying upon an order . . . issued under a preponderance of evidence standard to prove this case by clear and convincing evidence.

[¶32] "The purpose of evaluating for cumulative error is 'to address whether the cumulative effect of two or more individually harmless errors has the potential to prejudice the defendant to the same extent as a single reversible error.'" *Guy v. State*, 2008 WY 56, ¶ 45, 184 P.3d 687, 701 (Wyo. 2008) (citations omitted). Only those matters that are considered error are evaluated under our cumulative error analysis. *Id.* "We will reverse . . . only when 'the accumulated effect [of the errors] constitutes prejudice and the conduct of the trial is other than fair and impartial.'" *Id.* (citations omitted).

[¶33] SAS presents a number of issues which she failed to raise before the trial court. We have often repeated that we will not consider a new issue on appeal that has not first been brought to the attention of the district court. *Meima v. Broemmel*, 2005 WY 87, ¶ 56, 117 P.3d 429, 447 (Wyo. 2005); *EBH v. Hot Springs Dep't of Family Servs. (In re IH)*, 2001 WY 100, ¶ 25, 33 P.3d 172, 182 (Wyo. 2001); *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1208 (Wyo. 2000); *WW Enters., Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo. 1998); *Bredthauer v. TSP*, 864 P.2d 442, 447 (Wyo. 1993). We forego the application of this rule when the issue presented implicates either jurisdictional questions or fundamental rights. *Id.* Because termination of parental rights proceedings affect the "fundamental liberty of familial association," we will address those issues raised by SAS for which she has provided argument and authority.

[¶34] W.R.A.P. 9.05 requires that we review such issues for plain error. Plain error occurs when "1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." *Deeds v. State*, 2014 WY

10

124, ¶ 21, 335 P.3d 473, 479 (Wyo. 2014) (citations omitted). "The appellant bears the burden of proving plain error[.]" *Id.*

[¶35] SAS first contends that error occurred when the State neglected to file the petition to terminate her parental rights within sixty days of the juvenile court's determination not to reunify the family in accordance with § 14-3-431(o). While the record fails to inform us of the exact date when the juvenile court decided to cease reunification efforts with SAS, the State concedes that the petition was not filed within sixty days of that determination. We must therefore resolve whether the State's failure constituted a "transgression of a clear and unequivocal rule of law." *Deeds*, 2014 WY 124, ¶ 21, 335 P.3d at 479 (citation omitted).

[¶36] The statutory provision on which SAS relies states, "A petition to terminate parental rights shall be filed within sixty (60) days of a judicial determination that reasonable efforts to reunify the child and parent are not required pursuant to W.S. § 14-2-309(a)(vi), (b) or (c)." Wyo. Stat. Ann. § 14-3-431(o). The statute unambiguously asserts that the statutory deadline applies only when the juvenile court makes a judicial determination that reunification efforts are not necessary pursuant to one of the identified statutory provisions, § 14-2-309(a)(vi), (b) or (c).

[¶37] Our analysis in this case is severely hampered as few of the documents from the juvenile action were introduced as evidence in the district court proceeding. We have no record of the basis for the juvenile court's decision not to reunify the children with SAS. We therefore cannot determine whether its decision not to reunify was made pursuant to § 14-2-309(a)(vi), (b) or (c), thus triggering the sixty-day deadline. While we may speculate as to the juvenile court's reasoning, we cannot rest our decision on mere speculation. *MM v. State of Wyo., Dep't of Family Servs. (In re MM)*, 2009 WY 28, ¶ 16, 202 P.3d 409, 414 (Wyo. 2009) ("[W]e will not speculate as to the reasons for the decision." (citations omitted)). As a result, we are unable to determine whether § 14-3-431(o) applies. *See In re KMO*, 2012 WY 99, ¶ 15, 280 P.3d at 1210 (finding that § 14-3-431(o) did not apply when there was no finding in the juvenile court with respect to the statutory provisions in § 14-3-431(o)). "[I]t is the responsibility of appellant[] on appeal to assure the presence of any part of the record necessary for consideration. We cannot and will not consider any matter on which the record is silent." *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.*, 743 P.2d 880, 888 (Wyo. 1987); *see also* W.R.A.P. 3.05. Because an inadequate record prevents us from concluding whether there was a "transgression of a clear and unequivocal rule of law," we cannot say that plain error occurred. *See Deeds*, 2014 WY 124, ¶ 21, 335 P.3d at 479 (stating that the appellant has the burden of proving plain error).

[¶38] SAS next contends that error occurred when the district court failed to hold the termination hearing within ninety days of the petition being filed in accordance with § 14-3-431(p). The first step of our analysis is satisfied as the record is clear that the

11

termination hearing was not held within ninety days of the petition being filed. However, the district court did not transgress a clear and unequivocal rule of law when it held the hearing outside of the ninety day statutory deadline. Section 14-3-431(p) states, "A termination of parental rights hearing shall be held within ninety (90) days of the filing of the termination petition unless continued by the court for good cause shown." Wyo. Stat. Ann. § 14-3-431(p). While the district court held the termination hearing outside of the ninety-day deadline, the statute allows a continuance of the hearing for "good cause shown." *Id.* The State filed a Motion for Order Finding Good Cause on August 9, 2013. Admittedly, the State filed the motion outside the statutory deadline, but the decision whether to grant or deny a continuance rests within the broad discretion of the district court. *Jones v. Jones*, 903 P.2d 545, 547 (Wyo. 1995); 17 Am. Jur. 2d *Continuance* § 3 (2004). Absent "a manifest abuse of discretion," we will not disturb the district court's ruling. *Richard v. Richard*, 2007 WY 180, ¶ 6, 170 P.3d 612, 614 (Wyo. 2007). "To find an abuse of discretion, the [decision] must be so arbitrary as to deny appellant due process, and the burden rests upon appellant to prove actual prejudice and a violation of h[er] rights." *Id.* SAS provided no evidence or argument to this Court demonstrating that she was actually prejudiced by the district court's decision to grant the continuance. As a result, there was no transgression of a clear and unequivocal rule of law and no plain error.[12]

[¶39] SAS also argues that the district court erred when it granted the State's motion to continue the hearing without allowing SAS's counsel an opportunity to respond to the motion. The State filed the motion with the district court on August 9, 2013, and mailed it to SAS's counsel on August 7, 2013. The district court entered an order continuing the hearing on August 19, 2013. W.R.C.P. 6(c)(1) states that a party affected by a motion "may serve a response . . . at least three days prior to the hearing on the motion or within 20 days after service of the motion[.]" While the rule clearly allows an affected party twenty days to respond, SAS has failed to demonstrate that she was "denied a substantial right resulting in material prejudice" by the actions of the district court.[13] *Deeds*, 2014 WY 124, ¶ 21, 335 P.3d at 479. The continuance resulted in the trial being held outside the ninety-day statutory deadline. Nowhere in SAS's brief has she argued that this delay resulted in prejudice to her. *See id.* ("The appellant bears the burden of proving plain error."). In fact, the delay was due, in part, to SAS's insistence that the Indian Child Welfare Act controlled the proceedings. *See, e.g., Ortiz v. State*, 2014 WY 60, ¶ 42, 326 P.3d 883, 893 (Wyo. 2014) (stating that delays attributable to the defendant, such as pretrial motions, may disentitle the defendant to speedy trial safeguards). Because SAS did not suffer material prejudice, no plain error occurred.

---

[12] Our analysis on this issue applies equally to SAS's argument that the district court erred when it granted the continuance despite the motion being filed outside the ninety-day deadline.

[13] In the district court proceedings, SAS made no allegation that the district court's order granting the motion prior to the lapse of the twenty-day period was in error. She filed no response or objection to the motion and did not address the delay in the proceedings at the scheduling conference that occurred over a month later.

[¶40] SAS alleges that the district court erred in relying on the juvenile court's adjudication of neglect, which employs a preponderance of the evidence standard, to establish SAS's unfitness in the termination proceeding, which requires a standard of clear and convincing evidence. However, the record demonstrates that the district court did not rely on the juvenile court's adjudication of neglect to find SAS unfit. Instead it based its decision of SAS's unfitness on the extensive evidence elicited at trial, and discussed in this opinion, *see supra* ¶¶ 25-28, demonstrating SAS's inability to meet the physical, mental, and emotional needs of her children. There was no error.

[¶41] The remainder of SAS's allegations of error are not supported by argument or authority. Our precedent dictates that we disregard issues "not supported by cogent argument and authoritative citation." *State v. Campbell Cnty. Sch. Dist.*, 2001 WY 90, ¶ 35, 32 P.3d 325, 333 (Wyo. 2001). We therefore refrain from considering those issues.

[¶42] Because we find no error, SAS's argument that the cumulative effect of errors violated her due process rights fails.

### IV. Was SAS's allegation of ineffective assistance of counsel appropriately raised for the first time in SAS's reply brief?

[¶43] SAS devoted the entirety of her reply brief to the question of whether her trial counsel provided ineffective assistance of counsel. In her opening brief, however, she made only a passing reference stating, "It is unknown whether this rises to the level of ineffective assistance of counsel," and "Appellate [sic] would argue ineffective assistance of counsel." SAS, however, made no argument and cited no authority to support her allusions to ineffective assistance of counsel. In his brief, the *guardian ad litem* (GAL) pointed to a number of issues that SAS failed to raise in the proceedings below. SAS took this as an invitation to argue the issue of ineffective assistance of counsel in her reply brief despite failing to adequately address it in her opening brief.

[¶44] Wyoming Rule of Appellate Procedure 7.03 provides, in pertinent part, "[T]he reply brief shall precisely and concisely set forth on the first page those *new issues and arguments raised by the brief of the appellee* which are addressed in the reply brief. A reply brief is *limited to such new issues and arguments*, . . . " (Emphasis added.) The rule clearly limits an appellant to addressing new issues and arguments raised by the appellee in its reply brief. "Rule 7.03 does not allow a party who fails to cite authority or adequately present argument in its opening brief to cure these deficiencies by filing a reply brief." *Budd-Falen Law Offices, P.C. v. Rocky Mountain Recovery, Inc.*, 2005 WY 77, ¶ 17, 114 P.3d 1284, 1289 (Wyo. 2005).

[¶45] Here, the GAL was not raising new issues, but was only arguing that SAS's contentions in her appeal were not well taken as they should have been raised in the

13

proceedings below. *See Ultra Res., Inc. v. McMurry Energy Co.*, 2004 WY 121, ¶ 9, 99 P.3d 959, 962 (Wyo. 2004) ("McMurry was not raising a new issue, it was pointing out the failure by Ultra to challenge a dispositive ruling by the district court[.]").  The arguments made by the GAL did not open the door to allow SAS to "argue the merits of an issue that was [her] responsibility to designate in [her] opening brief." *Id.*  "Presenting argument in a reply brief is not equivalent to framing the issues in an opening brief.  A reply brief is not a second chance to raise an issue or present argument that the appellant had the responsibility, but failed, to address in [her] opening brief." *Id.* at ¶ 11, 99 P.3d at 963.  SAS had both the responsibility and opportunity to present the issue of ineffective assistance of counsel in her opening brief; she failed to do so.  She cannot attempt to cure her failure by slipping the argument in through the back door of a reply brief.  By failing to fully address the question of ineffective assistance of counsel in her opening brief, SAS effectively waived the issue. *Id.* at ¶ 11, 99 P.3d at 963.

## *CONCLUSION*

[¶46]  We find that the district court was not deprived of its jurisdiction when statutory deadlines were bypassed.  The State presented clear and convincing evidence to support the district court's finding that SAS's parental rights should be terminated pursuant to Wyo. Stat. Ann. § 14-2-309(a)(v).  We find no error occurred to support SAS's cumulative error argument.  Finally, SAS waived her contention that she received ineffective assistance of counsel when she failed to fully address the issue in her opening brief.  Affirmed.