KAUTZ, Justice.
*101 [¶1] Elizabeth Joy Swenson (Mother) appeals the termination of her parental rights with respect to her three children, LCH, BLH and KAGH. We affirm.
ISSUE
[¶2] Mother presents the following issue:
Did the evidence clearly and convincingly establish that Mother's parental rights should be terminated?
FACTS
[¶3] Mother has three children who are the subject of this case: LCH born in 2009, BLH born in 2010, and KAGH born in 2013. Mother resided in Gillette, Wyoming, with the children, and the children's father resided in Newcastle, Wyoming. In June 2013, Mother was involuntarily hospitalized because of mental health problems, and the State placed the children in protective custody. At that time, LCH was four, BLH was two, and KAGH was about a week old. The juvenile court held a shelter care hearing on June 19, 2013, and placed the children in foster care. The children have remained in foster care since then.
[¶4] The Department of Family Services (DFS) developed a case plan for Mother and the children, identifying the permanency goal for the children as reunification with their mother. It provided extensive services to accomplish reunification. The children stayed overnight with Mother in August 2014, as part of a trial home placement. That effort ended unsuccessfully when Mother was unable to safely provide for the children. She permitted others, some intoxicated and one who brought a gun, in the home with the children. After the trial home placement failed, numerous counselors attempted to assist Mother in developing skills and abilities to consistently recognize and act on the needs of the children. Unfortunately, although Mother attended visitations and counseling, she was not engaged in the activities, and the children were not developing any relationship with her. To the contrary, visits were chaotic and increased visitation and joint counseling led to increased behavioral and emotional problems for the children.
[¶5] LCH, BLH and KAGH all have special emotional and physical needs. On October 31, 2014, Mother participated in a "Parent Child Interactional Evaluation" at the Kempe Center for the Prevention of Child Abuse and Neglect. The report from that evaluation stated: "The children require permanency as soon as possible; a potential caregiver should be able to meet their safety, emotional, and attachment needs immediately. ... [A]t the time of the evaluation it was not certain that she (Mother) had the capacity to provide long-term care for them or meet complex emotional needs without intensive support." It determined that KAGH required immediate permanency, and that Mother was unable to provide adequate care for her. The report concluded that LCH and BLH could wait on permanency for six months, giving Mother time to "demonstrate the ability to meet their needs."
[¶6] After the report from the Kempe Center, DFS provided substantial therapy, personal assistance, and visitation to both the children and Mother. Those efforts continued until a permanency hearing in the juvenile court in February 2016. Mother did not improve in her ability to provide for the children, but instead failed to maintain an adequately safe home for the children, fell asleep during three sessions, cancelled visits, and was unable to adequately provide for and control the children.
[¶7] The State filed a petition to terminate Mother's parental rights, and after trial, the *102 district court ordered that Mother's rights to LCH, BLH and KAGH be terminated.
STANDARD OF REVIEW
[¶8] Mother challenges the sufficiency of the evidence to establish the statutory requirements for termination of her parental rights. "In a sufficiency of the evidence review, we give considerable deference to the district court's determination because it has the advantage of observing the demeanor of the witnesses." AJJ v. State (In re KMJ ) , 2010 WY 142, ¶ 20, 242 P.3d 968, 972 (Wyo. 2010).
We apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. BA v. Laramie County Dep't of Family Servs., 2007 WY 128, ¶ 7, 163 P.3d 844, 847 (Wyo. 2007) ; CDB v. DJE, 2005 WY 102, ¶ 4, 118 P.3d 439, 440 (Wyo. 2005) ; BSC v. Natrona County Dep't of Family Servs., 2004 WY 167, ¶ 11, 102 P.3d 890, 894 (Wyo. 2004). We examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party. MN v. State, Dep't of Family Servs., 2003 WY 135, ¶ 5, 78 P.3d 232, 234 (Wyo. 2003). This Court then reviews the supporting evidence to ascertain if it clearly and convincingly satisfies the statutory elements required to support termination. EBH v. Hot Springs Dep't of Family Servs., 2001 WY 100, ¶ 14, 33 P.3d 172, 178 (Wyo. 2001). Evidence is clear and convincing if it would persuade a trier of fact that the truth of the contention is highly probable. LP v. Natrona County Dep't of Public Assistance and Social Servs., 679 P.2d 976, 982 (Wyo.1984). This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. Street v. Street, 2009 WY 85, ¶ 9, 211 P.3d 495, 498 (Wyo. 2009). In applying our standard of review, we keep in mind that the right to associate with one's family is fundamental and strictly scrutinize petitions to terminate parental rights. RLA v. State of Wyo., Dep't of Family Servs., 2009 WY 109, ¶ 13, 215 P.3d 266, 268 (Wyo. 2009).
JLW v. CAB (In re WDW) , 2010 WY 9, ¶ 17, 224 P.3d 14, 19 (Wyo. 2010).
DISCUSSION
[¶9] The district court found that the State presented clear and convincing evidence proving the statutory grounds for termination of Mother's parental rights under both subsections (iii) and (v) of Wyo. Stat. Ann. § 14-2-309(a) (LexisNexis 2017). When more than one statutory basis for termination of parental rights is addressed in a case, as occurred here, we need not consider all grounds if sufficient evidence supports one of them. In re KGS, 2017 WY 2, ¶ 21, 386 P.3d 1144, 1148 (Wyo. 2017). It is necessary for us to only consider the sufficiency of the evidence to support termination under § 14-2-309(a)(v). This statute required the State to prove: "(1) that the children have been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months; and (2) that [the parent] is unfit to have custody and control of the children." In re AGS, 2014 WY 143, ¶ 20, 337 P.3d 470, 477 (Wyo. 2014).
[¶10] The first element - that the children have been in foster care for the required period of time - is only a "mathematical question." Id., ¶ 21, 337 P.3d at 477. "No justification or explanation as to why a child was placed in foster care is required in a termination proceeding brought on these grounds." In re KMO, 2012 WY 100, ¶ 18, 280 P.3d 1216, 1222 (Wyo. 2012). Mother concedes the children were in foster care under the responsibility of the State for fifty (50) months at the time of trial.
[¶11] The second element of § 14-2-309(a)(v) requires that the State prove Mother "unfit" to have custody and control of the children. We have previously recognized:
[T]he determination of whether a parent is unfit to have care and custody of a child must be made within the context of a particular case and will depend upon the situation and attributes of the specific parent and child. Looking at our cases, we are able to extrapolate that fitness includes the *103 ability to meet the ongoing physical, mental and emotional needs of the child. It is well-settled that a parent's fitness is to be determined at the time of the termination trial.
That does not mean, however, that the district court must ignore evidence of a parent's previous unfitness. This Court recently reiterated that it is appropriate for a district court to consider a parent's history and pattern of behavior over time in determining whether rights should be terminated. Evidence of past behavior is plainly relevant in determining current parental fitness."
In re KMO , ¶ 20, 280 P.3d at 1222-23 (internal citations and quotations omitted).
[¶12] The record is replete with evidence that Mother was unable to meet the needs of the children at the time of trial. She was unable to meet their needs even during short visits, whether supervised or unsupervised. Mother does not argue that the evidence failed to show her inability to meet the needs of the children at the time of trial. To the contrary, she asserts that her "rehabilitation, while not complete , has been successful and should be allowed to continue." She claims the State should "invest more time and money into this family that would lead to eventual reunification." In essence, Mother claims that although she was unfit at the time of trial, additional time and assistance to her might result in her being able to adequately care for her children. Her position amounts to an admission that she was unfit at the time of trial.
[¶13] Mother's claim that she might become capable of caring for her children some day in the future ignores the plain language of § 14-2-309(a)(v), and the interests of her children. This section of our statute, adopted pursuant to the federal Adoption and Safe Families Act (ASFA), recognizes that "parents do not have an unlimited time to rehabilitate and reunite with their children." See State ex rel. Children, Youth & Families Dept. v. Maria C., 136 N.M. 53, 94 P.3d 796, 803 (2004). Both ASFA and § 14-2-309(a)(v) acknowledge the need of children for permanency and consistency by placing limits on the time for a parent to correct conditions sufficiently to reunite with the children. These statutes shift the emphasis from protracted efforts for reunification to an expeditious, permanent solution for the child. "A child cannot be held prisoner to the rights of others, even those of his or her parents. Children have their own rights, including the right to a permanent, safe and stable placement." New Jersey Div. of Youth & Family Servs. v. C.S., 367 N.J.Super. 76, 842 A.2d 215, 237 (2004). By adopting § 14-2-309(a)(v), the legislature recognized that when foster placement exceeds the statutory time frame, "it is the children who suffer by remaining in a state of flux and uncertainty." See David J. Herring, Inclusion of the Reasonable Efforts Requirement in Termination of Parental Rights Statutes: Punishing the Child for the Failures of the State Child Welfare System, 54 U. Pitt. L. Rev. 139, 144-150 (1992) (discussing the developmental harm to children by long-term placement in temporary foster care). In re AGS , ¶ 17, 337 P.3d at 476-77.
[¶14] Section 14-2-309(a)(v) recognizes circumstances when a parent's rights yield to the permanency interests of the children, even when the parent wants to continue reunification efforts. We described this situation in In re MN , 2003 WY 135, ¶ 32, 78 P.3d 232, 239 (Wyo. 2003) :
We are not unsympathetic to the disabilities and hardships of the parents. However, this case demonstrates a situation in which the best interest of the child and the fundamental rights of the parents diverge. While we zealously guard the fundamental right of parents to care for and associate with their children, we also recognize that a child has the fundamental right to live in an environment free from filth, health hazards, and danger; he also has the right to nourishment, education, and necessary medical attention. Matter of MLM, 682 P.2d 982, 990 (Wyo.1984). "When the rights of a parent and the rights of a child are on a collision course, the rights of the parent must yield." Id.
Mother's claim that she may improve in the future and become "fit" to have custody and control of the children is irrelevant to the elements of § 14-2-309(a)(v).
*104 [¶15] Mother makes other assertions which also are irrelevant to § 14-2-309(a)(v). She complains of the adequacy of services provided by DFS. She claims that she was not accused of violating any court order, and termination of her parental rights "is inherently unfair when there are other parents, without mental illness but sick with addiction, who make mistakes which are excused, overlooked and forgiven - time and time again." Mother complains that the State did not "prove by clear and convincing evidence that Mother cannot be rehabilitated." She alleges that DFS "abdicated it's [sic] Supervisory Role to a Third Party." None of these assertions have any bearing on whether the State proved the elements of § 14-2-309(a)(v).
CONCLUSION
[¶16] Section 14-2-309(a)(v) requires the State to prove, by clear and convincing evidence, that the children had been in foster care for fifteen of the most recent twenty-two months, and that Mother was unfit, at the time of trial, to have custody. Mother explicitly admits that, at the time of trial, the children had been in foster care for far longer than the required time. She tacitly admits that she was unfit to have custody by arguing that she would have gained fitness at some time in the future if the termination had not occurred. The district court's finding that each of these requirements for termination was proven by clear and convincing evidence is supported by the record.
[¶17] Affirmed.